## CIRCUIT COURT OF THE CITY OF PETERSBURG

Nationwide Mutual Ins. Co.

v.

Ann P. Andrews, etc., et al.

May 9, 1991

By JUDGE OLIVER A. POLLARD, JR.

This matter is before the Court on defendant's Motion for Summary Judgment and Cross-Motion filed on behalf of the petitioner. It has been agreed between the parties that the Court should decide this matter upon consideration of the pleadings, the facts contained in the depositions of Nancy K. Garstka and David Pryor, and the Nationwide policy.

In this case, petitioner, Nationwide Insurance Company, insured a motor vehicle owned by Thomas F. Craig. On the day in question, Catherine Andrews was operating Mr. Craig's vehicle, with his permission. Ms. Andrews had driven a friend, Ms. Garstka, to a local physician and was thereafter taking her to a hospital at the direction of the physician. Ms. Andrews phoned David Pryor and requested that he go with them to the hospital, and she drove to Pryor's house to pick him up. Ms. Andrews parked in front of Pryor's house, cut off the headlights, and exited the car. The engine was left running and Ms. Garstka, who was in considerable pain, was left in the vehicle. After telling Ms. Garstka "stay here, I will be right back, I'm just going to get David," Ms. Andrews walked about ten to twelve feet toward Pryor's house and was struck by an uninsured motorist.

Nationwide argues that Ms. Andrews did not sustain the injuries that lead to her death while occupying or

using the Craig vehicle and, therefore, she was not an insured under the uninsured motorist section of the policy. Nationwide relies primarily on the case of *Insurance Company of North America v. Perry*, 204 Va. 833 (1964). In that case, Perry, a police officer, had driven a city-owned police vehicle to a certain location for the purpose of serving a warrant. After parking the vehicle, he walked approximately one hundred and sixty-four feet along the roadway before being struck by an uninsured motorist. The Supreme court held, as matter of law, that the officer was not an "insured" under the policy, as the fatal injury did not occur while he was using the police cruiser. On the other hand, the Andrews estate suggests that Ms. Andrews was "using" the vehicle in question at the time she was injured and, therefore, was an "insured" under the Nationwide policy. Reliance is placed on the circumstances that "the engine of the Jaguar was running; she was only ten to twelve feet away from the Jaguar when struck; and the reason she exited the Jaguar was to greet and bring to the Jaguar a passenger who would help in achieving the purpose of the Jaguar's trip . . . ." The only case cited that deals with the specific issue involved is *American Insurance Company v. Cassell*, 239 Va. 421 (1990). In the *Cassell* case, a fire department captain traveled to the scene of a fire in one of several fire trucks that responded and which were positioned in a way to divert traffic and protect the firefighters. The captain was standing some twenty to twenty-five feet from the pumper truck that he had ridden in taking reports from witnesses when he was struck by a hit and run vehicle. The Supreme Court held that the captain was an "insured" under the uninsured motorist coverage of the policy covering the pumper truck. The Court reasoned that the captain "was using the fire truck when he was struck and killed by the hit and run driver. The firefighters parked the fire pumper and fire tanker on opposite sides of the disabled car, thereby creating a barrier to control traffic and protect fire fighters. [The captain's] fire truck was used to pump water (which was stored on the truck) through hoses to extinguish the fire. The clipboard and pad that were used to complete the required fire report were transported to the scene in the fire truck and were to be returned to the fire truck . . . [the] use of the fire

truck to extinguish the fire, control traffic, and protect firefighters, including [the captain] was an integral part of the firefighter's mission. The mission had not been completed when the accident occurred. Unlike the police officer in *Perry*, [the captain] was engaged in a transaction essential to the use of the fire truck when he was killed. *Id.* at 424.

Nationwide attempts to distinguish the *Cassell* cases from the one under consideration saying "Ms. Andrews was not 'using,' even under the most liberal interpretation of that word, *while* or *at the time* she was struck by the uninsured motor vehicle, unlike the fire captain in *Cassell* who was actually using the pumper truck, among other things, as a barricade to protect him from oncoming traffic . . . ." Further, the specific language in the *Cassell* and *Perry* cases make clear that the use of the uninsured vehicle must occur *while* or *at the time* of the accident with the uninsured motor vehicle.

There is no question that the Craig vehicle, at the time of Ms. Andrews's injury, was an integral part of her mission to transport Ms. Garstka to the hospital and that the mission was continuing and had not been completed. Additionally, Ms. Garstka, who was the very object of Ms. Andrews's mission, remained in the vehicle in question for whatever moments were needed to fetch Mr. Pryor to the vehicle.

It is, therefore, this Court's opinion that Ms. Andrews was "using" the Craig vehicle at the time of the accident and an insured under the uninsured motorist coverage provided by the Nationwide Insurance Company.